UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

VAL AND ALENA KANIFOLSKY,

Plaintiffs,

v.

UNITED STATES OF AMERICA, et al.,

Defendants.

No. CV-04-470-FVS

ORDER

**THIS MATTER** comes before the Court based upon the parties' cross motions for summary judgment. The plaintiffs are represented by Mr. Patrick K. Fannin. The defendants are represented by Assistant United States Attorney Pamela J. DeRusha.

**BACKGROUND**

Val and Alena Kanifolsky purchased a parcel of property in Spokane County, Washington, that is burdened by an easement their predecessors in interest granted to the United States. The easement authorizes the United States to "erect, operate, maintain, repair, rebuild, and patrol one or more electric power transmission lines and appurtentant signal lines, poles, towers, wires, cables, and appliances necessary in connection therewith[.]" (Transmission Line Easement at 1.) In addition, the easement authorizes the United States to keep the burdened property clear of structures. *Id.* at 2.

These rights are being exercised by the Bonneville Power Administration ("BPA"). During the Fall of 2004, the Kanifolskys began building a house on their property. They knew about the easement, but mistakenly assumed it was 60 feet wide. In fact, the easement is 425 feet wide. BPA employees observed the project and advised the Kanifolskys that part of their house encroaches upon the easement. Construction has ceased. If completed, the Kanifolskys house will not interfere with the BPA's present use of the easement, although it may do so in the future.

**RULING**

The law of the State of Washington provides the rule for adjudicating the parties' rights under the easement. *See Coos County Sheep Co. v. United States*, 331 F.2d 456, 457, 460 (9th Cir.1964) (Oregon law controlled whether a landowner was entitled to compensation "for the destruction of trees which were growing and standing adjacent to a power line owned and maintained by the United States of America pursuant to a written right-of-way easement owned by it"). In Washington, the owner of the servient estate is "entitled to use [the servient estate] for any purpose that does not interfere with the proper enjoyment of the easement." *Thompson v. Smith*, 59 Wn.2d 397, 407-08, 367 P.2d 798 (1962). *Cf.* Restatement (Third) of Property: Servitudes § 4.9 cmt. c (2000) ("The person who holds the land burdened by a servitude is entitled to make all uses of the land *that are not prohibited by the servitude* and that do not interfere unreasonably with the uses authorized by the easement or

profit.”) (Emphasis added.[1]) The Kanifolskys insist their house will not interfere unreasonably with the BPA’s use of the easement. Thus, say the Kanifolskys, they should be allowed to complete it.

Neither party has cited, and independent research has failed to uncover, a Washington appellate decision that is directly on point. However, two decisions warrant careful review. One is *Thompson*. In that case, the defendant poured a twelve by twenty-four foot slab of concrete on his property. Part of the concrete slab encroached upon a ten-foot strip of land that had been reserved for a road, but which, when the slab was poured, was not being used for that purpose. 59 Wn.2d at 403. The Washington Supreme Court held the defendant could not be compelled to remove the slab until the easement was used for a road. *Id.* at 407, 409-10. The state Supreme Court’s rationale is instructive:

> It would appear from the record that [defendant Gail] Smith, by his conduct, has made himself obnoxious to his neighbors; but that is no justification for depriving him of the present use of the south-ten feet of his property until it is required for road purposes, . . . .
>
> In fact, when and if a roadway is opened over the strips reserved for that purpose, it may be that the grade will be such that the slab will need only to be covered over; but, if and when such a roadway is put in, the slab, if it is an interference, would have to be removed.
>
> *However, we do not believe that a structure that could not be removed without substantial cost should be permitted in such an easement, unless there is some guarantee that it will be removed if necessary.*

*Id.* at 409 (emphasis added).

The other case that warrants careful review is *City of Seattle*

[1] The Supreme Court of the State of Washington has yet to adopt § 4.9 of the Restatement (Third) of Property.

*v. Nazarenus*, 60 Wn.2d 657, 374 P.2d 1014 (1962) ("*Nazarenus*"). There, the City of Seattle obtained an easement over certain property in order to construct, operate, and maintain an electric power transmission system. The easement was silent with respect to whether the owner of the servient estate was authorized to place permanent improvements on the burdened property. *Id.* at 663. A dispute arose when the owner first extended his house onto, and later built a carport upon, the City's right of way. *Id.* at 658. The Washington Supreme Court held the contested improvements were impliedly forbidden by the easement because they unreasonably interfered with the City's right to construct, operate, and maintain an electric power transmission system. *Id.* at 667. For one thing, the structures constituted a hazard. For another thing, they hindered the City's access to its right of way. *Id.* at 666.

As the Kanifolskys point out, their house does not create a hazard or hinder the BPA's access to its power lines, nor will their house ever do so unless the BPA adds or relocates power lines. Since, at present, there is no way to know whether these contingencies will occur, it makes no sense, say the Kanifolskys, to prohibit them from completing their house. What is to be gained, ask the Kanifolskys, by requiring them to keep the servient estate idle?

Flexibility, for one thing; a structure-free easement allows the BPA to act more quickly should it need to modify its power transmission system. The right to keep the easement free of structures is a right for which the United States gave valuable

consideration and it is a right that is set forth unambiguously in the instrument which created the easement. *Cf. Brown v. Voss*, 105 Wn.2d 366, 371, 715 P.2d 514 (1986) ("the extent of the right acquired is to be determined from the terms of the grant properly construed to give effect to the intention of the parties").[2] Were the Kanifolskys proposing a minimal encroachment upon the burdened property, the BPA's interest in a structure-free easement might have to yield to the Kanifolskys' interest in maximizing the use of their property. However, the encroachment proposed by the Kanifolskys is not a minimal encroachment: It is a large, expensive house. The Kanifolskys will reside there, together with their possessions, for the foreseeable future. Moreover, it will be extremely difficult for them to remove the encroachment should the need arise. This is a point the Kanifolskys forcefully made shortly after commencing this action. "There is no practical way," said Mr. Kanifolsky, "to cure the encroachment because the whole house would have be [torn] down and redesigned. [I]t would cost more to do this than the original cost to build the whole home." (Val Kanifolsky's Affidavit of December 21, 2004, ¶¶ 14 and 15, at 3.) Given these circumstances (*viz.*, the permanence of the encroachment and the difficulty and expense that will be required in order to remove it), the Kanifolskys' proposed use of the servient estate amounts to

[2]The fact the Kanifolskys are expressly precluded by the terms of the easement from constructing a house on the servient estate serves to distinguish their case from both *Thompson* and *Nazarenus*.

unreasonable interference. This conclusion is reinforced by the Restatement:

> If the improvement is temporary and easily removed, it is generally not unreasonable. The more expensive the improvement or the more difficult its removal is likely to be, the more likely is the conclusion that the improvement is an unreasonable interference with the easement or profit.

Restatement (Third) of Property: Servitudes § 4.9, p. 584 (2000).

Under Washington law, the existence of an unreasonable encroachment is not the end of the matter. In *Nazarenus*, the Washington Supreme Court listed a number of factors that should be considered before the owner of the servient estate is ordered to remove an encroaching improvement. These include:

> The character of the interest to be protected, the relative adequacy to the [easement holder] of injunction and of other available remedies such as damages; [the easement holder's] delay in bringing suit, [the easement holder's] misconduct, if any; the relative hardship likely to result to [the owner of the servient estate] if the injunction is granted and to [the easement holder] if it is denied; the interest of third parties and of the public, and the practicability of framing and enforcing the order or judgment.

60 Wn.2d at 668-70 (quoting *Pacific Gas & Electric Co. v. Minnette*, 115 Cal.App.2d 698, 709, 252 P.2d 642 (3d Dist.1953)). These factors weigh in favor of removal. As in *Minnette* and *Nazarenus*, the Kanifolskys have invaded the public interest. The encroachment is both substantial and permanent. Furthermore, the Kanifolskys began building their home with knowledge that their property is burdened by an easement. Although the Kanifolskys did not know the actual width of the easement, this information was readily available. The

Kanifolskys assumed the risk of removal by failing to inquire. Finally, the remedy proposed by the Kanifolskys – *i.e.*, requiring the BPA to wait until the encroachment actually interferes with the BPA's use of the easement -- is unreasonable. It is unrealistic to think the Kanifolskys, or their successors in interest, will readily agree at some unspecified time in the future to remove part of a completed house in order to accommodate the BPA's needs. To the contrary, it seems almost certain the Kanifolskys would compel the BPA to resort to litigation. In the meantime, the existence of the Kanifolskys' encroachment likely would encourage other property owners to disregard the BPA's easement.

**IT IS HEREBY ORDERED:**

1. The Kanifolskys' motion for summary judgment (Ct. Rec. 30) is denied.

2. The defendants' motion for summary judgment (Ct. Rec. 26) is granted.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this 5th day of May, 2005.

s/Fred Van Sickle
Fred Van Sickle
Chief United States District Judge